IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSE V.,

                    Claimant,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Respondent.

No. 21 CV 896

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Jose V.[1] ("Claimant") seeks review of the final decision of Respondent

Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying

his application for a period of disability and disability insurance benefits under Title

II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the

parties consented to the exercise of jurisdiction of a United States Magistrate Judge

for all proceedings, including entry of final judgment. [ECF No. 7]. This Court,

therefore, has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties filed motions

for summary judgment. *See* [ECF Nos. 18, 26]. This matter is fully briefed and ripe

for decision.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion to Reverse the Decision of the Commissioner of Social Security seeking remand [ECF No. 18] ("Motion") is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 26] is denied.

## PROCEDURAL HISTORY

On May 8, 2019, Claimant filed a Title II application for a period of disability and disability insurance benefits. (R.16). In his application, Claimant alleged a disability beginning on March 1, 2019. (R.16). The application was denied initially on September 19, 2019, and again on reconsideration on February 13, 2020, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (R.16). On August 27, 2020, Claimant appeared telephonically and testified at a hearing before ALJ David R. Bruce. (R.16). Claimant was represented by counsel at the hearing. (R.16). During the hearing, the ALJ also heard telephonic testimony from the Claimant's wife, Shadaries V., and Glee Ann L. Kehr, a vocational expert. (R.16).

On September 29, 2020, the ALJ issued his decision denying Claimant's application for a period of disability and disability insurance benefits. (R.16-27). The ALJ followed the five-step evaluation process required by the Social Security Regulations to determine if an individual is disabled. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since March 1, 2019, the alleged onset date of disability. (R.18). At step two, the ALJ found that Claimant had the following severe impairments: chronic non-intractable

headaches, epididymitis, patellofemoral syndrome of the knees, chronic gastric ulcers, irritable bowel syndrome, and generalized anxiety disorder. (R.18).[3]

At step three, the ALJ found that although Claimant has severe impairments, these impairments did not individually or in combination meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)). (R.19-20). The ALJ also found Claimant's mental impairments, considered singly and in combination, did not meet or equal the criteria of listings 12.04 and 12.06. (R.20). In making that finding, the ALJ considered and concluded that Claimant did not meet the paragraph B criteria of at least two "marked" limitations or one "extreme" limitation. The ALJ concluded Claimant had only mild limitations in understanding, remembering and applying information, and in adapting or managing oneself, and moderate limitations interacting with others and in concentrating, persisting or maintaining pace. (R.19-20). The ALJ also concluded the record fails to document the presence of any "paragraph C" criteria. (R.20).

Before proceeding from step three to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"). (R.20-21). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The ALJ concluded:

---

[3] The ALJ noted that a consultative examiner diagnosed Claimant with a mood disorder, but that Claimant's doctors treat him for anxiety rather than depression. (R.18-19). The ALJ noted that mental disorders can be "variously categorized" and treatments can address multiple mental conditions simultaneously, but ultimately concluded that Claimant's anxiety disorder is "clearly his preeminent mental impairment." (R.18-19).

> "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: frequent climbing ramps, stairs, ladders, ropes, and scaffolds; frequent kneeling, crouching, and crawling; no work at unprotected heights or around moving mechanical parts; and involving simple, routine tasks, simple work-related decision, and occasional interaction with supervisors, coworkers, and the public."

(R.20-21). At step four, the ALJ determined that Claimant had past relevant work as a porter and as a cashier checker. (R.25). However, the ALJ concluded Claimant was unable to perform past relevant work due to the skill and exertional levels required for those positions. (R.25). At step five, the ALJ considered Claimant's age, education, work experience, and residual functional capacity, and found there are jobs that existed in significant numbers in the national economy that Claimant can perform, including based on the testimony of the vocational expert that Claimant would be able perform certain representative occupations (housekeeper, mailroom clerk, and marker). (R.26). For all these reasons, the ALJ found Claimant has not been under a disability, as defined in the Social Security Act, since March 1, 2019, the alleged onset date, to the date of the opinion. (R.27).

The Appeals Council declined to review the matter on December 18, 2020, making the ALJ's decision the final decision of the Commissioner. (R.4-9). The Appeals Council also considered additional evidence and argument submitted by Claimant on December 26, 2020, but found no new facts that would warrant a change in the ALJ's decision. (R.1-2). Therefore, this Court now has jurisdiction to review this matter. 42 U.S.C. § 405(g); *Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *see also* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for

such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before deciding whether to affirm the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it.").

## ANALYSIS

Claimant argues the ALJ's decision cannot stand because: (1) the ALJ's RFC analysis is not supported by substantial evidence as to both Claimant's irritable bowel syndrome and mental health impairment; (2) the ALJ's finding that Claimant's treating gastroenerologist opinion was not persuasive is not supported by substantial evidence; and (3) the ALJ erred in discounting Claimant's subjective mental health

symptoms. [ECF No. 18] at 1-12. *See also* Plaintiff's Reply to Defendant's Memorandum in Support of Motion for Summary Judgment [ECF No. 29] ("Reply").[4]

For the reasons discussed below, the Court finds the ALJ improperly drew negative inferences from Claimant's treatment history to discount his subjective mental health symptoms and failed to support the RFC as to Claimant's mental limitations with substantial evidence. These errors require remand on this record, so the Court will not address Claimant's remaining arguments.

## I.   The ALJ Improperly Drew Negative Inferences From Claimant's Treatment History To Discount Claimant's Subjective Description Of His Symptoms

Claimant argues the ALJ improperly discounted Claimant's accounts of his mental health symptoms based on his noncompliance with psychiatric medications without exploring the reasons why Claimant did not comply. [ECF No. 18] at 12-13. In particular, Claimant says the ALJ failed to consider whether Claimant's mental impairments may have prevented or impeded his compliance with treatment. [*Id.*]

The Commissioner argues it was sufficient that the ALJ acknowledged various reasons for Claimant's refusal to take certain medications. [ECF No. 26] at 21. The Commissioner also says substantial evidence supported the ALJ's discounting of Claimant's subjective mental health symptoms, pointing to the ALJ's findings that a state examination report suggested Claimant had the mental capacity to perform unskilled work even when not taking medication; Claimant's mental health had

---

[4] Claimant also challenged the constitutionality of the appointment of former Social Security Commissioner Andrew Saul, [ECF No. 18] at 14-15, but Claimant has withdrawn that argument in his reply brief, [ECF No. 29] at 11, n.4.

generally been stabilized with limited intervention; and that Claimant had some normal mental status exams. [ECF No. 26] at 21.

The Court agrees with Claimant that the ALJ improperly relied on Claimant's failure to take psychiatric medication to discount the severity of his symptoms without adequately exploring the reasons for Claimant's non-compliance. The ALJ found Claimant had severe generalized anxiety disorder and noted the extent of his limitations was worse when Claimant did not take psychiatric medication, but ultimately relied on Claimant's stable status while on medication to conclude his mental health impairments did not meet listing level severity and (as addressed further below) to find Claimant would be able to perform work within the scope of the RFC. (*See* R.18-21,24-25).

At Step Three, the ALJ acknowledged Claimant's "mental limitations are complicated by noncompliance with medication" but asserted Claimant "appeared to be stable" when receiving treatment. (R.19). Based on this conclusion, the ALJ found the severity of Claimant's mental impairments did not meet Listing criteria. (R.19-20.) The ALJ discounted Claimant's testimony that he is forgetful and has difficulty concentrating and his wife's testimony that he needs help understanding instructions based on his conclusion that Claimant's mental status "appeared to be stable" while he complied with medication. (R.19). Similarly, the ALJ minimized Claimant's "episode of aggressive behavior towards his wife that resulted in a psychiatric admission" because it occurred after Claimant "unilaterally" stopped taking his psychotropic medication. (R.19). The ALJ also noted Claimant "clearly has some

8

limitation in his ability to interact appropriately with others" but found "this has been exacerbated by his noncompliance with treatment." (R.19-20). Finally, the ALJ observed that Claimant's history of resistance to mental health treatment "suggested some deficits" in the area of "adapting or managing himself, but concluded this was only a mild limitation.[5]

In the RFC analysis, the ALJ noted Claimant's testimony about panic attacks, memory issues, mood swings, irritability and aggressive behavior, noted Claimant said he was more limited by such symptoms than by his physical impairments, and summarized Claimant's wife's testimony that his mental health had deteriorated, that she had to remind him to take medication or turn off the stove, and that he has daily panic attacks and loses his temper. (R.21). The ALJ also described medical records of "several emergency room visits" related to Claimant's mental health and panic attacks, as well as Claimant's inpatient psychiatric treatment for two weeks in July 2019. (R.24). Ultimately, however, the ALJ concluded that Claimant was stable while taking medication, citing Exs. 2F and 20F. (R.19).

As to Ex. 2F, the ALJ found May and June 2019 reports (which included a diagnosis of "[g]eneralized anxiety disorder with panic attacks") suggested Claimant was stable when on medication. (R.24, *see also* R.334-339)). Even as to that time period, however, the ALJ's summary noted Claimant struggled with consistently

---

[5] With regard to Claimant's limitations in interacting with others, the ALJ discounted Claimant's uncooperativeness during his psychiatric hospitalization, a period of time when he stopped taking medication, because Claimant's wife testified Claimant "gets along well with authority figures" and has never been fired due to problems getting along with others. (R.20). The ALJ did not address, however, when these apparently stable periods occurred or whether Claimant was complying with medication at those times.

taking his medication. In one of the May 2019 reports, Claimant "requested to reduce his medication dose because he believed he did better on a lower dose." (R.24). A few weeks later, the ALJ stated that Claimant "presented to the emergency department" with a panic attack "but he reported that he took Xanax and 'felt relief.'" (R.24 (citing Ex. 11F)). Less than two weeks after that episode, Claimant reported "aggressive behavior after unilaterally halving his Effexor dosage and reporting hallucinations after taking gabapentin," and Claimant was ultimately referred for a two-week inpatient psychiatric treatment. (R.24). Although the ALJ noted Claimant "continued to refuse medication and was uncooperative with staff" during his hospitalization (R.19-20), the ALJ did not explore why, instead concluding "[g]iven the claimant's noncompliance with treatment, it is not surprising that he continued to report anxiety symptoms at subsequent visits and he continued to blame his symptoms on medications that were prescribed." (R.24). Ultimately, the ALJ discounted Claimant's testimony about his mental health symptoms based on Claimant's "minimal ongoing treatment and limited compliance with that treatment." (R.22, 24).[6]

Given the ALJ's discounting of Claimant's subjective symptoms, the ALJ was obligated to explore the reasons for Claimant's noncompliance with medication or other treatment. Although an ALJ's credibility determination is entitled to deference,

---

[6] The other record evidence cited by the ALJ were records of treatment at a gastroenterology clinic. (Ex. 20F, R.1380-1401). The ALJ noted "no inappropriate behavior is noted" in these records (R.20) and that Claimant did not exhibit anxiety or depression during these visits. (R.25). As Claimant notes, these reports are from a gastroenterologist (Dr. Berkelhammer), not a psychiatrist, and the ALJ did not attempt to reconcile these records with other medical evidence regarding Claimant's anxiety or mental health. [ECF No. 18] at 11. The ALJ also did not explain how the gastroenterologist reports addressed the efficacy of Claimant's psychiatric medications or the reasons for Claimant's non-compliance with medications.

an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009). Social Security Ruling 16-3p provides that while an ALJ may consider that a claimant "fails to follow prescribed treatment that might improve symptoms," an ALJ may not find "the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record . . . without considering possible reasons he or she may not comply with treatment . . ." *See* SSR 16-3p, 2017 WL 5180304, at *9-10 (ALJ may need to "ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and may consider that "[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms"). The ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [the ALJ] considered the individual's reasons in our evaluation of the individual's symptoms." *Id.*

The ALJ failed to adequately develop the record as to why Claimant failed to take his medications as prescribed or whether Claimant's mental health impairments interfered with his ability to do so. The ALJ focused on brief periods when Claimant's symptoms appeared to improve while on medication, but did not reconcile that evidence with Claimant's subsequent refusal or inability to continue to do so, even within that same time period, or his resulting psychiatric hospitalization. The ALJ

11

acknowledged that Claimant's resistance to treatment suggested some deficits in his ability to care for himself, but the ALJ did not explain why he concluded this limitation was "mild" or whether Claimant would be able to comply with prescribed medication and remain stable in the future. (R.20); *see also* [ECF No. 26] at 21. Elsewhere in his opinion, the ALJ described Claimant's assertions of unusual side effects from his medications for both his mental health and physical impairments, as well as his repeated decisions to stop taking medications abruptly without weaning or unilaterally reducing his dosage. (R.22-24 ("claimant has reported perceived side effects of medications that are atypical . . .")). Yet the ALJ did not explore these reasons for Claimant's failure to consistently take medications. Similarly, although the ALJ noted Claimant's description of symptoms of memory issues and forgetfulness, and Claimant's wife's testimony that she has to remind him to take his medications, the ALJ did not address whether these symptoms may have impacted Claimant's ability to consistently take medication. (R.21; R.54-56).

The Court finds that the reasons provided by the ALJ for discounting Claimant's mental health symptoms are not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). "When considering non-compliance with treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about whether non-compliance with treatment is justified and develop the record accordingly." *Hernandez v. Colvin*, 2016 WL 4506871, at *3–4 (N.D. Ind. Aug. 29, 2016) (citing *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) and *Craft*

*v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008)). "[W]hile infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding, we have emphasized that 'the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (quoting *Craft*, 539 F.3d at 679); *see also Torres v. Kijakazi*, 2022 WL 843931, at *3 (E.D. Wis. Mar. 22, 2022) (remanding where "ALJ erred in considering [claimant's] non-compliant treatment without considering the reasons for it"). This is also expressly required by SSR 16-3p. *Id.*, 2017 WL 5180304, at *9-10.

Reasons for a claimant's noncompliance with medication or treatment must be explored before relying on such noncompliance as a basis for a negative credibility assessment, particularly in the context of mental health impairments. *See, e.g., Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (remanding where "ALJ apparently concluded that Jelinek's symptoms would have remained under control but for an unwillingness to take her medications as directed" but failed to consider possible explanations for non-compliance); *Kangail v. Barnhart*, 454 F.3d 627, 629–31 (7th Cir. 2006) (remanding where ALJ did not consider possibility that "mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment"); *Hargrove v. Berryhill*, 2017 WL 3172917, at *4 (S.D. Ind. June 30, 2017), *report and recommendation adopted*, 2017 WL 3153582 (S.D. Ind. July 25, 2017) ("Without some explanation of why Hargrove had compliance issues and inconsistent treatment, the ALJ was not permitted to discount Hargrove's

credibility on these grounds."); *Yolanda B. v. Kijakazi*, 2023 WL 3947722, at *7 (N.D. Ill. June 12, 2023) ("Despite his extensive reliance on plaintiff's noncompliance with medication and other treatments, the ALJ never considered 'possible alternative explanations'. . ."); *Sidney Z. M. v. Kijakazi*, 2023 WL 1100438, at *4 (N.D. Ill. Jan. 30, 2023) ("ALJ did not acknowledge that failure to take medications and continue with therapy is a common problem with certain mental impairments" and remanding because "ALJ should have at least considered whether Plaintiff's resistance to treatment was a symptom of her illness as opposed to evidence that her complaints of poor functioning were not credible."). For these reasons, remand is necessary to allow the ALJ to address Claimant's reasons for not consistently taking prescribed psychiatric medications.

## II.     The Mental RFC Is Not Supported By Substantial Evidence

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a complete and written evaluation of every piece of evidence, but he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

The ALJ's RFC limited Claimant to light work with additional mental limitations that the work involve simple, routine tasks, simple work-related decisions, and occasional interaction with supervisors, coworkers, and the public. (R.20-21). Claimant contends the RFC failed to account for evidence about Claimant's need for frequent daily reminders to complete tasks, including Claimant's descriptions of his symptoms, his wife's testimony, and a state agency report noting Claimant's difficulty concentrating during the examination. [ECF No. 18] at 5-8, 13-14. Claimant also notes the ALJ questioned the vocational expert about how the need for frequent reminders as to job tasks would impact potential employment options and the expert opined such reminders would be inconsistent with competitive work. [ECF No. 18] at 5. Finally, Claimant argues the ALJ relied on state agency findings in crafting the RFC mental limitations, but failed to include an additional limitation also found by the state agency restricting Claimant to tasks requiring only one or two step instructions. [ECF No. 18] at 7-8.

The Commissioner responds that the ALJ adequately considered Claimant's limitations by summarizing Claimant's subjective symptoms and other evidence, and concluding Claimant could perform simple, routine tasks and make simple work-related decisions. [ECF No. 26] at 15. The Commissioner says it is not error for an ALJ to question a vocational expert about a hypothetical limitation that the ALJ ultimately does not factor into the RFC. [*Id.*] The Commissioner also argues the failure to include the one and two step instructions in the RFC was harmless error because one sufficient job would still remain. [ECF No. 26] at 16.

The Court agrees with Claimant that the ALJ did not adequately explain how the mental limitations in the RFC account for the evidence regarding Claimant's need for frequent reminders to complete tasks or why notwithstanding the ALJ's questioning of the vocational expert, such limitations are not warranted. The ALJ first asked the vocational expert about potential employment for the RFC that was ultimately adopted in the opinion. (R.63-64). After the vocational expert identified three potential jobs, the ALJ asked whether a need for daily reminders regarding job tasks would impact the availability of those jobs. (R.64-65). The ALJ's question appeared to stem from Claimant and his wife's testimony about his need for frequent reminders to perform daily tasks. (R.50, 54-56). In response, the vocational expert testified the need for such reminders would be inconsistent with competitive work. (R.65). In the ALJ's opinion, however, he did not address the vocational expert's opinion or explain why he did not incorporate a frequent task reminder in the RFC.

The Commissioner says the ALJ's hypothetical question to the vocational expert does not necessarily mean that the ALJ believed such a limitation was warranted. [ECF No. 26] at 15. The ALJ was, however, obligated to explain why, given the record evidence, the ALJ's questioning, and the testimony of the vocational expert, the ALJ did not include that limitation in the RFC. The Commissioner's cases involve distinguishable circumstances where the claimant did not present any evidence supporting the hypothetical limitation about which the ALJ had questioned the vocational expert. *See* [ECF No. 26] at 15.

For instance, in *Kathleen C. v. Saul*, the claimant failed to present any evidence that she would be likely to be off task more than would be acceptable in competitive work. *Id.*, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) (rejecting argument that ALJ's questioning of vocational expert established any off task limitation was warranted in RFC because claimant "failed to substantiate" her claim about amount of time she would be off task); *see also Karla J.B. v. Saul*, 2020 WL 3050220, at *5 (N.D. Ill. June 8, 2020) (acknowledging vocational expert's testimony that no jobs would be available were claimant limited to occasional handling and fingering but noting claimant failed to provide any evidence supporting such limitation beyond her own testimony). Here, there is no dispute that Claimant presented evidence regarding his need for frequent reminders, including his testimony and his wife's testimony at the hearing which appeared to be the motivation for the ALJ's questions to the vocational expert.[7]

The Commissioner also failed to address Claimant's cited cases stating that where an ALJ solicited an opinion from a vocational expert as to whether limitations referenced in the record would be work-preclusive, the ALJ must then address that opinion and whether those limitations are warranted in the RFC. [ECF No. 18] at 5. *See*, *e.g.*, *Kukec v. Berryhill*, 2017 WL 5191872, at *3–4 (N.D. Ill. Nov. 9, 2017) (remanding where "ALJ pointedly solicited from the VE his opinions concerning Plaintiff's off-task time" but "failed to provide any analysis of whether, for example,

---

[7] Claimant says an agency interviewer reported that Claimant struggled with concentration during his interview, but this also does not appear to have been addressed by the ALJ. *See* [ECF No. 18] at 6 (citing Ex. 1E at R.206); [ECF No. 29] at 3 n.1

Plaintiff was limited by any off-task allowances and, if, so, for how long" concluding it was "not a harmless error, particularly because the VE testified that Plaintiff would be unemployable under a hypothetical where she would be off-task at least 20% of the time").

The Commissioner also argues the ALJ adequately considered evidence and found Claimant was only limited to performing simple routine tasks and making simple work-related decisions. [ECF No. 26] at 15. While the ALJ summarized the evidence regarding Claimant's need for frequent task reminders, in the Court's view there was not substantial evidence to support the ALJ's decision not to include any task reminder limitation in the RFC. The ALJ acknowledged Claimant and his wife's testimony about his need for daily task reminders, but ultimately found Claimant's statements to be inconsistent with the record. (R.19-22). In terms of contrary record evidence, the ALJ noted Claimant's prior employment performing semi-skilled work as a cashier, observing "his mental symptoms allegedly dat[e] to childhood," but the ALJ did not reconcile this with his later conclusion that the demands of a cashier position exceeded the scope of the RFC. (R.19, 25). The ALJ appears to have primarily relied on Claimant's ability during the consultative examination to stay on task sufficient to perform simple math. (R.19, 20, 24). The ALJ concluded this "indicates that the claimant would be capable of unskilled work within the above [RFC]." (R.24 (citing Ex. 8F)). The consultative examiner did note Claimant's "concentration and attention appear to be within normal limits, in that he remained well focused and on task throughout the evaluation without re-direction or reminding, as evidenced by

the claimant's performance on [simple math problems] . . ." but did not make any findings regarding Claimant's ability to remain on task to perform unskilled work on a full-time basis. (R.755). Instead, the report concluded with Claimant's diagnosis of "generalized anxiety disorder" and "[m]ajor depression, recurrent, severe" and stated Claimant "appears to be able to manage funds adequately on his own behalf, if funds are granted to him." (R.756-57).

The ALJ failed to build a bridge between this evidence about Claimant's ability to stay on task during a brief consultative examination (of approximately 50 minutes) and the ALJ's conclusion that Claimant would be capable of performing full-time unskilled work without the need for any task reminders. (R.19-20, 24). Moreover, although the ALJ specifically raised the impact of an additional limitation of frequent task reminders with the vocational expert, the ALJ did not address the expert's opinion that such a limitation would preclude any competitive work. *See Stephen M. v. Berryhill*, 2019 WL 2225986, at *6 (N.D. Ill. May 23, 2019) (noting "[a]lthough the ALJ's decision references Plaintiff's anger issues, the ALJ did not sufficiently address whether Plaintiff's condition was such that a certain hypothetical addressed by the vocational expert was relevant" and finding "[i]t is reversible error for an ALJ to elicit testimony from a vocational expert only to ignore the testimony without any explanation.").

In addition, the ALJ did not explain how he considered Claimant's wife's testimony on this issue. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The administrative law judge should have made clear whether he believed the fiancée's

testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief."); *Andrew L. v. Kijakazi*, 2021 WL 5447035, at *3–4 (N.D. Ill. Nov. 22, 2021) (rejecting argument that regulations do not require any analysis of how non-medical evidence was considered; "This court therefore concludes that Section 1520c requires at least minimal articulation of how nonmedical evidence was considered . . . to allow the court to meaningfully assess whether the ALJ applied the correct legal standards and supported her decision with substantial evidence."). For all of these reasons, remand is necessary to determine whether substantial evidence supports an RFC that does not include any task reminder limitation.

Claimant also argues the state agency opinions relied on by the ALJ concluded Claimant could carry out only one or two step tasks (*see* R.25), yet the ALJ failed to include this limitation in the RFC or to consider whether this additional limitation would reduce Claimant's potential employment options. [ECF No. 18] at 7. Although the Commissioner does not directly dispute this limitation was not accommodated in the RFC, the Commissioner contends any such error was harmless because even had this additional limitation been included at least one significant category of employment (the housekeeper occupation) would remain. [ECF No. 26] at 16.

The Commissioner may be correct that it would be harmless error were Claimant limited to a single job category where there are over 660,000 such positions available nationally. *See Adrian B. v. Comm'r of Soc. Sec.*, 2023 WL 2163276, at *10 (S.D. Ill. Feb. 22, 2023) ("any error by the ALJ in failing to include a restriction to one-to-two-step tasks in the hypothetical she posed to the vocational expert was

harmless because it is undisputed that the cleaner-housekeeping job is consistent with that restriction and is available in significant numbers in the economy."); *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *6 (N.D. Ill. May 31, 2019) (same) (citing 820 C.F.R. § 404.1566(b) and *Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008)); *see* [ECF No. 26] at 16. Nevertheless, given the ALJ's failure to address whether other mental limitations should have been included in the RFC, the ALJ should address the totality of Claimant's limitations on remand and analyze the potential available employment opportunities in that context. *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994) (remand appropriate where court was "unable to evaluate and determine whether substantial evidence existed to support the ALJ's finding" because additional limitation on claimant's use of his hands "would have had significant impact on the disability determination since according to the VE, the only employment available to Herron would then be the security guard position"); *Lothridge*, 984 F.3d at 1233 (ALJ must consider totality of claimant's limitations).

Finally, the ALJ's RFC is premised on the extent of Claimant's mental limitations while he is taking psychiatric medication or complying with treatment. The ALJ noted "outside of short periods of increased mental symptoms concurrent with noncompliance with his medication, the record does not suggest the claimant is incapable of performing unskilled work described in the [RFC]." (R.25). As was the case with the ALJ's Step Three analysis, this suggests the ALJ recognized Claimant's potential inability to perform such work when he failed to take medication. *See* (R.19 ("claimant's mental limitations are complicated by noncompliance with medication,

but while receiving treatment the claimant's mental status appeared to be stable")). In short, the ALJ acknowledged Claimant's mental limitations could impede his ability to work but concluded he would be able to perform work within the RFC when his symptoms were controlled by medication.

The ALJ cannot "play doctor" in this manner. The ALJ's speculation as to the extent of Claimant's abilities if he complied with treatment recommendations or took certain medication "was a medical finding that the administrative law judge was not qualified to make." *See*, *e.g.*, *David v. Colvin*, No. 14-CV-653-BBC, 2015 WL 6738882, at *8 (W.D. Wis. Nov. 4, 2015) ("Where the administrative law judge went astray is in concluding that 'were [plaintiff] busy on a full-time basis and consistent with treatment, her mental signs and symptoms would be greatly reduced,'" citing *Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir. 1996)). The ALJ does not identify any medical evidence that certain medications would allow Claimant to work in accordance with the limitations of the RFC. *See Hampton v. Colvin*, No. 1:12-CV-275-JEM, 2014 WL 523043, at *6–8 (N.D. Ind. Feb. 7, 2014) (remanding and noting "the ALJ determined what [Claimant's] RFC would be if [she] were fully compliant with a prescribed treatment plan. Any finding on the ultimate question of disability based on this hypothetical RFC would itself be hypothetical."); *David*, 2015 WL 6738882, at *8 (ALJ should have explored possibility that claimant's mental health condition itself inhibited her ability to take her medications "before concluding that plaintiff could work full time if she took her medicine as prescribed"). In short, there "is no medical assessment which supports a finding that [Claimant] can perform" all of the

requirements contained in the RFC while he is on certain medication. *See Barbarigos v. Berryhill*, 2019 WL 109373, at \*12 (N.D. Ill. Jan. 4, 2019); *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (ALJ is not allowed to "play doctor" by using his or her own lay opinions to fill evidentiary gaps in the record).

For these reasons, the ALJ's RFC as to Claimant's mental limitations is not supported by substantial evidence and remand is required for further development of the record as to Claimant's compliance or noncompliance with treatment and the reasons for that. In addition, on remand the ALJ should consider whether Claimant's pattern of noncompliance with medication and increased mental limitations during such periods will permit consistent gainful employment. *See Kangail*, 454 F.3d at 629–31 (noting "'[g]ainful employment,' however, does not include 'unsuccessful work attempts'" and that ALJ, in relying on claimant's ability to work when she took her psychiatric medication, failed to explore whether claimant's mental illness might impede her ability to take medication consistently); *Punzio v. Astrue*, 630 F.3d 704, 710–11 (7th Cir. 2011) (ALJ failed to analyze whether inability to work due to mental health symptoms for even just a few days a month would preclude consistent employment); *see also* (R.751-757 (Ex. 8F) (report of consultative examiner stating Claimant was fired from his last job due to missing too many days at work)). Remand is appropriate where an ALJ failed to address how the claimant would be able to sustain work during periods of increased symptoms or "to consider and discuss the circumstances in which Plaintiff's improved condition is reported in the record, for example, upon discharge from a mental health hospitalization." *See Cooper v.*

*Berryhill*, 2018 WL 1181590, at *5 (N.D. Ind. Mar. 7, 2018) ("on remand, the ALJ will have an opportunity to discuss how the Plaintiff is able to work in the context of the unpredictable nature of her mental illness"). To this end, the Court notes the ALJ focused on Claimant's apparently improved symptoms during a consultative examination shortly after his discharge from a two-week in-patient psychiatric hospitalization, but did not further explore the expected or anticipated duration of that period of stability. (R.24).[8]

Remand is thus also necessary to determine whether substantial evidence supported the mental limitations the ALJ included the RFC.

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Motion to Reverse the Decision of the Commissioner of Social Security seeking remand [ECF No. 18] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 26] is denied. This matter is remanded to the Social Security Administration for proceedings consistent with this Memorandum Opinion and Order.

---

[8] For similar reasons, the Court questions whether there is substantial evidence to support the ALJ's suggestion that Claimant would be able to perform unskilled work within the RFC while taking no medication based on his performance during a consultative examination shortly after he was discharged from a psychiatric hospitalization. (R.24). In any event, the ALJ generally relied on Claimant's stable status while complying with medication and discounted his symptoms when he failed to comply with medication. (R.19-20, 24-25).

It is so ordered.

_____

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   December 27, 2023